UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
EDWIN RAMIREZ,                           :
                         Petitioner,     :
                                         :   07 Civ. 1832 (DLC)
           -v-                           :
                                         :   OPINION & ORDER
JAMES T. CONWAY,                         :
                         Respondent.     :
                                         :
-----------------------------------------X

Appearances:

Pro se Plaintiff:
Edwin Ramirez
No. 01-A-3967
Wyoming Correctional Facility
P.O. Box 501, Dunbar Road
Attica, New York 14011

For Respondent:
Stanley R. Kaplan
Dimitri Maisonet
Assistant District Attorneys
Office of the District Attorney for Bronx County
198 East 161st Street
Bronx, New York 10451

DENISE COTE, District Judge:

  Edwin Ramirez brings this timely pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on one count of Burglary in the First Degree, N.Y. Penal Law § 140.30, and one count of Robbery in the First Degree, id. § 160.15. This case was referred to Magistrate Judge Frank Maas for a report and recommendation ("Report"). The Report was issued on July 23, 2008, and recommends that the

writ be denied and the petition dismissed on the ground that Ramirez's claims are without merit. Ramirez's objections to the Report, dated August 2, were received by the Court on August 7. This Opinion adopts the Report.

BACKGROUND

The facts relevant to the petition are set forth in the Report and summarized here. On November 1, 2000, Ramirez and his cousin Orlando Hurtado assisted Jocelyn Monegro, Hurtado's girlfriend, as she moved herself and her fourteen-year-old daughter into a second-floor apartment in the Bronx.[1] The move took approximately twelve hours, and Monegro paid Ramirez $250 for his work. On November 19, Hurtado and Monegro had a violent altercation. Monegro told Hurtado to leave the apartment, and to leave his keys behind. When Hurtado left, Monegro noticed that her daughter's set of keys was missing, while Hurtado's keys were still on the table where he had left them.

In the middle of the night on November 25, Monegro was awakened by the sound of an intruder in her apartment. Two men broke down Monegro's locked bedroom door, pushed her and her son onto the bed, and ordered the pair not to make any noise or look at them. While one intruder held Monegro at gun point, the other reached into the bedroom closet to retrieve a safe. While

---

[1] Monegro's son came to live in the apartment approximately two weeks later.

2

he was bending down to do so, the t-shirt covering his face fell off.  Monegro recognized that intruder as Ramirez.  Monegro's daughter also recognized Ramirez when he entered her bedroom and ordered her to lay on the ground and cover her face.  Ramirez sat on her stomach and placed his hand over her mouth.  She remained still and feigned death, at which point Ramirez left her bedroom and continued to rummage through the house.  At one point, Ramirez told his accomplice to kill Monegro because she had recognized him, and therefore he could not leave her alive. Startled by noise from the apartment downstairs, Ramirez and the other perpetrator left the house.  When police arrived on the scene, they found no sign of forced entry into Monegro's apartment.  Monegro and her daughter told the police that Ramirez was one of the intruders.  On January 12, 2001, they picked him out of a lineup.  Ramirez was indicted on twenty-two charges, including two counts of attempted murder.  He proceeded to trial in Supreme Court, Bronx County, before Justice Roger S. Hayes.

    At trial, the defense theory was primarily alibi: that Ramirez was at home with his wife at the time of the crime. Ramirez's alibi witness was his wife ("Mrs. Ramirez"), who also served as a character witness.[2]  On direct examination by defense

---

[2] Defense counsel also secured a stipulation with the prosecution concerning Hurtado, who was expected to invoke his

counsel Jorge Guttlein, Mrs. Ramirez testified that Ramirez was "a wonderful husband, father, a good person." She claimed that he had never "shown any violence to [her] or anyone else" and that, to her knowledge, he had never been arrested.

In light of the direct examination, the prosecutor requested a sidebar. She produced an arrest report for Ramirez which indicated that on March 6, 1998, Ramirez was arrested after his wife filed a criminal complaint alleging that Ramirez had kicked, beaten, and threatened to kill her during an altercation. Guttlein indicated that he was shocked by this information. He claimed the prosecutor's revelation was "trial by ambush," and that he had "never heard of" the arrest report, "nor would [he] have reason to know of it." The prosecutor informed defense counsel that "he should have the arrest print-out for this incident" because she had provided him with a copy prior to trial.

The judge permitted the prosecutor to proceed with cross-examination as to whether the altercation between the witness and Ramirez had occurred and whether the witness had gone to the police, but directed the prosecutor not to inquire as to whether Ramirez was ever arrested. On cross-examination, Mrs. Ramirez

---

privilege against self-incrimination if called to testify. The parties stipulated that had Hurtado testified, he would have confirmed that Ramirez was his cousin and that he had helped Monegro with her move, but also would have stated that he had not given Ramirez a set of keys to Monegro's apartment.

repeated that she was at home with her husband on the night of the robbery. Near the end of cross-examination, defense counsel and the prosecutor approached the bench, and this sidebar ensued on the record:

> Mr. Guttlein: If in fact, which I'm not sure because I can't read this print-out for the life of me, and I was on notice and then I put her up on the stand, then obviously I've committed ineffective assistance of counsel and therefore, I ask to be granted a mistrial in the interest of justice and I should be released, with an emphasis on the last part.
>
> The Court: Mr. Guttlein, there's no way in the world you have done anything remotely like ineffective assistance of counsel in this case. You have been a competent, prepared lawyer. You've gotten adjournments when you needed them. And this is simply a matter that the witness and your client may not have been candid with you. So your motion for mistrial or to be released is denied.

Cross-examination resumed after this exchange. The witness testified that she recalled the March 6, 1998 altercation, but described it as "a little dispute" and stated that she "exaggerated about certain things" when she pressed charges against him. She testified that "the very next day I went and

5

dropped the charges and I went to pick him up," and that she had lived with him ever since.

Following Mrs. Ramirez's testimony, the court gave the jury this limiting instruction:

> In this case you cannot, cannot use the evidence of what may or may not have happened which the witness just testified about as evidence that the defendant is somewhat inclined or likely to commit acts of violence or criminal acts.
>
> Rather, you can use it for the limited purpose of helping you determine the credibility or believability of the witness who just testified and was then cross-examined regarding that act. And, you know, it's one factor that you can use in evaluating the credibility of that witness.
>
> But again, you should not use it in any way to give you a sense, well, the defendant might have done something two years ago with the witness so he's more likely to be guilty of the crime involved in this case. You cannot use it for that purpose.

Ramirez also testified. As to the March 6, 1998 incident, he claimed that he had been interrogated by the police, but not arrested. He stated that he never beat his wife and, when asked whether he had ever threatened to kill her, Ramirez said, "Never." Following Ramirez's testimony, the court instructed the jury to use this information "for the limited purpose of the [e]ffect, if any, that you determine it should have on the witness' credibility at this time," and not as "evidence in any way as to the charge under consideration."

6

Defense counsel also pressed a second theory: that Hurtado was the perpetrator of the crime. Guttlein elicited testimony that Hurtado harbored violent tendencies, was motivated to commit the crime because of his altercation with Monegro, and had Monegro's daughter's set of keys that permitted him entry to the apartment.

At the close of proof, nineteen of the twenty-two counts against Ramirez were dismissed. Of the three counts submitted to the jury, Ramirez was convicted on May 8, 2001, of two: Robbery in the First Degree and Burglary in the First Degree.[3] On June 27, 2001, Justice Hayes sentenced Ramirez to two concurrent fifteen-year prison terms.

On January 23, 2004, Ramirez moved to vacate the judgment of conviction under New York Criminal Procedure Law § 440.10. The motion was predicated on the ineffectiveness of counsel, particularly on counsel's failure to consider Ramirez's arrest report before examining Ramirez's wife. In support of Ramirez's motion, Guttlein submitted an affirmation explaining that "trial strategy was to show that Edwin Ramirez was an honest, nonviolent man." Guttlein averred that he "never sought to discover information about Mr. Ramirez's criminal history, other than to determine that he had no prior convictions. I did not ask Mr. Ramirez or otherwise verify whether he had ever been

---

[3]  He was acquitted of Robbery in the Second Degree.

arrested." He further affirmed that, had he known about Ramirez's prior arrest, he "would not have put Ms. Ramirez on the stand as a character witness for her husband," and "certainly would not have asked, as [he] did during trial, whether Mr. Ramirez had ever shown violence towards [Mrs. Ramirez] or anyone else, or whether she knew if Mr. Ramirez had ever been arrested." Guttlein contended that "the entire case came down to the believability of the witnesses who testified at trial" because "there was no independent corroboration of the complaining witnesses' allegations that Mr. Ramirez was actually the person who robbed the apartment."

Justice Caesar Cirigliano denied Ramirez's motion on May 20, 2004 without reaching its merits, finding that the motion was barred by the law-of-the-case doctrine because Justice Hayes had ruled on it during the trial. Leave to appeal was granted by the Appellate Division on October 21, 2004.[4] Before the Appellate Division, Ramirez argued that he had been provided with ineffective assistance of counsel and that his sentence was excessive. The Appellate Division affirmed Ramirez's conviction and sentence on October 18, 2005. Explicitly considering Ramirez's ineffective assistance of counsel claim under both state and federal standards, the court found that "the trial

---

[4] The Appellate Division also granted Ramirez leave to consolidate his appeal from Justice Cirigliano's denial of his post-trial motion with the direct appeal of his conviction.

8

record, viewed in totality and as of the time of the representation, establishes that counsel provided defendant with meaningful representation." People v. Ramirez, 22 A.D.3d 334, 337 (App. Div. 1st Dep't 2005).

The Appellate Division observed that trial counsel "vigorously represented defendant's interests by making pretrial motions," id., successfully suppressing a potentially inculpatory emergency call transcript and advancing two different defense theories. As to the alibi theory, the court found that the defense case was not necessarily undermined by admission of Ramirez's arrest report because trial counsel "elicited from defendant's wife that her report was generated based upon her 'exaggerated' allegations that her husband had assaulted her, and that she declined to press charges." Id. The court further noted that Ramirez and his wife testified consistently that they were home together at the time Monegro was robbed. Id. Finally, the court deemed the evidence of Ramirez's guilt to be "overwhelming,"[5] id. at 338, pointing specifically to the testimony of two eyewitnesses who had met the defendant two weeks earlier and who identified him "in a lineup and at trial as one of the individuals who threatened

---

[5] By contrast, the court found that defense counsel's alternative theory of the case -- that Hurtado was the assailant -- was meritless: "While defense counsel attempted to implicate Orlando Hurtado, the record contains no evidence connecting him to the crime." Id.

them with a weapon and stole property from their home," as well as to "evidence that [Ramirez] had keys to the apartment and knew that they had valuable possessions because he had helped the family move into the apartment weeks earlier." Id.[6] The court also rejected Ramirez's excessive sentence claim. Id. Leave to appeal was denied by the New York Court of Appeals on January 31, 2006. People v. Ramirez, 6 N.Y.3d 779 (2006).

Ramirez's habeas petition, dated January 26, 2007, was received by this Court's Pro Se Office on February 1, 2007. It consists of a form coversheet, a copy of Justice Cirigliano's opinion denying Ramirez's post-trial motion, and a copy of the Court of Appeals order denying Ramirez leave to appeal. The petition raises only Ramirez's ineffective assistance of counsel claim. The Report, issued on July 23, 2008, recommended denial of the writ, and Ramirez has objected to the Report.

DISCUSSION

The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

---

[6] The Appellate Division stated that Ramirez "was given keys to the apartment and paid $250 for his help," id. at 335, on the day he helped Monegro move into her apartment. There does not appear to be evidence in the record suggesting that Ramirez was given a set of keys to the apartment on that day. But, as discussed below, evidence was adduced at trial that Hurtado had a set of keys to the apartment, and Ramirez had access to those keys because Hurtado lived with him periodically. Thus, while the Appellate Division's observation appears to be in error, it does not affect this Court's analysis of Ramirez's ineffective assistance of counsel claim.

judge." 28 U.S.C. § 636(b)(1)(C). The court shall make a de novo determination of the portions of the report to which petitioner objects. 28 U.S.C. § 636(b)(1); see United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Figueroa v. Riverbay Corp., No. 06 Civ. 5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006) (citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review Section 2254 petitions. When the state court has reached the merits of the petitioner's constitutional claim, habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2).

"[I]n order to prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." United States

11

v. Jones, 482 F .3d 60, 76 (2d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The performance inquiry examines the reasonableness of counsel's actions under "all the circumstances," Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (citing Strickland, 466 U.S. at 688), and from the perspective of counsel at the time, id. (citing Rompilla v. Beard, 545 U.S. 374, 389 (2005); Strickland, 466 U.S. at 689). A court must consider "the totality of the evidence before the judge or jury" in judging counsel's performance. Strickland, 466 U.S. at 695. As to prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006) (citing Strickland, 466 U.S. at 688, 694). The petitioner bears the burden of establishing both deficient performance and prejudice. See Greiner, 417 F.3d at 319.

Ramirez's ineffective assistance of counsel claim turns exclusively on Guttlein's failure to read the arrest report and his consequent decision to use Mrs. Ramirez not just as an alibi witness, but also as a character witness. The Report quite correctly rejected this claim. As to the first Strickland prong, the Report appraised Guttlein's performance less generously than did the Appellate Division. The Report did not

12

resolve this issue, however, because it determined that the Appellate Division did not err in finding that Ramirez could not show prejudice, given the strength of the evidence against him. Ramirez's objection is addressed only to the first prong of Strickland; it does not in any way touch on the Report's finding with respect to prejudice.

The Court assumes without deciding, as the Report did, that Ramirez has demonstrated that his trial counsel's performance fell below an objective standard of reasonableness. His petition must nonetheless be denied because, whether the Report is reviewed for clear error or de novo, Ramirez cannot demonstrate prejudice from counsel's ineffectiveness. "[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus." Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005). Here, as both the Appellate Division and the Report found, there was overwhelming evidence of Ramirez's guilt.

Two credible eyewitnesses, who had met Ramirez just two weeks before the crime and who had ample time to view Ramirez during the robbery, identified him as one of the intruders immediately after the incident, in a lineup, and in open court. Having moved the family into their new apartment, Ramirez knew that his victims possessed a safe and where it was located. Further, Ramirez had the opportunity to obtain from his cousin a

set of keys to Monegro's house.[7] Coupled with evidence of no forced entry, this evidence was sufficient to establish Ramirez's guilt.

The defense case was weak. Although Ramirez and his wife gave similar testimony that the couple was together on the night of the robbery, they contradicted each other on other basic facts, such as where they lived. There was little evidence to support defense counsel's alternative theory that Hurtado had committed the crime or enlisted someone other than Ramirez to do so as revenge on Monegro. Viewed in the context of all the trial evidence, the examination of the defendant and his wife concerning their 1998 altercation would have carried little weight. "[G]iven the plethora of evidence against [petitioner], there is little reason to believe that alternative counsel would have fared any better." United States v. Cohen, 427 F.3d 164, 171 (2d Cir. 2005) (citation omitted).

---

[7] The Appellate Division's opinion states that Ramirez "had keys to the apartment," 22 A.D.3d at 338, but this appears to overstate the evidence adduced at trial. Testimony elicited from Monegro and her daughter suggested that Hurtado took Monegro's daughter's keys from the apartment after the altercation between Hurtado and Monegro. Ramirez testified that his cousin, Hurtado, stayed with him from time to time. As the Report correctly observes, the jury was free to infer that Ramirez took the keys from Hurtado in order to rob Monegro's apartment.

14

CONCLUSION

The recommendation of Magistrate Judge Maas is adopted and the petition for a writ of habeas corpus is denied. In addition, the Court declines to issue a certificate of appealability. Ramirez has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss the petition.

SO ORDERED:

Dated: New York, New York
September 5, 2008

DENISE COTE
United States District Judge

15

Copies sent to:

Edwin Ramirez
No. 01-A-3967
Wyoming Correctional Facility
P.O. Box 501, Dunbar Road
Attica, New York 14011

Stanley R. Kaplan
Dimitri Maisonet
Assistant District Attorneys
Office of the District Attorney for Bronx County
198 East 161st Street
Bronx, New York 10451